# DAWSON *v.* EVERSBERG

[No. 223, September Term, 1969.]

*Decided March 11, 1970.*

The cause was submitted to HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Submitted on brief by *William O. E. Sterling* for appellant.

Submitted on brief by *Joseph D. Weiner* for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

Appellee's wife left him in 1952. In 1953 he moved in with the appellant (Doris). Eleven years and six children later he moved out. Some time thereafter Doris instituted the paternity proceeding provided by Code, Art. 16, §§ 66A—66P (1966 Repl. Vol.). On 24 August 1967 the Circuit Court for St. Mary's County, Bowen, J., declared appellee (Eversberg) to be the father of the six children, ordered him to pay Doris $80 per week for their support and continued them in her custody. In April 1969 Eversberg sought to adopt them. In his petition he alleged that "he is the[ir] father" and that "he wishes to legally adopt" them "so they may be legitimate." The petition concludes with the statement that the adoption "would in no way affect the fact that Doris Dawson, also known as Doris Eversberg, * * * shall continue to be the mother of said children." Doris intervened and, answering the petition, denied that the adoption would be to the best interest and advantage of the children; further, she alleged that she is a good mother, that she "cares for them and gives to them the love and affection that only a mother can give," that they are "healthy and happy," that "to disrupt them would be disastrous," that Eversberg is married and that he failed to state why "his spouse * * * [did] not join" in his petition.

In May the case came on for a hearing, again before

Judge Bowen. Eversberg testified he and Doris lived together for eleven years and that he was the father of the six children. Asked what was the cause of his separation from his wife he said "it would be about 3,000 different things." He had no idea whether she was dead or alive or whether she had obtained a divorce. He does not contend that the children are not properly cared for; nevertheless, he insists "that is the case." They use his name and he has "a will made out where * * * [his] children are * * * [his] heirs." Doris testified at some length but what follows is a fairly accurate summary of her testimony:

"Q. Now, Mrs. Dawson, do you object to the granting of the adoption as prayed for in this petition? A. I don't want the adoption.

"Q. You do object? A. I do object and yes.

"Q. And why? A. In the first place, I can't see—the way I understand it, I have the custody of the children. I was granted that. You can't have the children pulled apart. You either have one person raise them or two people in harmony. You can't have a person tell one thing and one person tell another. The children are confused now days anyway. I am full time mother. * * * I've never refused him to see his children. He can continue to see his children as long as he doesn't put a lot of things in their heads, what they have been telling me when they come home. Another thing, he is not adopting the children to take them up to that store to have for free labor, and I mean that. Those kids are going to work. They're going to get paid for it. They're not going up there for free labor."

At the conclusion of the hearing Judge Bowen remarked from the bench that the adoption of the children was necessary "in order to legitimate them" and that Doris was withholding her consent "selfishly" and unreasonably and "against the[ir] best interest[s]." He said

he would sign a decree of adoption reserving to Doris, however, "whatever rights she had as the natural mother of the children." On 2 June 1969 a decree, dated 26 May 1969, was filed in which the children were "declared to be the adopted children of their natural father * * * and, his heirs at law." The decree concluded with the proviso that nothing therein "shall affect the parental rights of Doris * * * as the natural mother of said infants." It is from this decree that Doris has appealed.

## I.

We shall deal first with Doris' contention that the case should have been dismissed because Eversberg's wife did not join in the petition. Maryland Rule D71 c provides that "[i]f the petitioner is then married or shall marry before entry of a final decree of adoption, his spouse shall join in or consent to the petition, as required by law, or the petition shall state the reason why such spouse does not join or consent." *See also* Rule D72 a 1 (f). Code, Art. 16, § 70 (1966 Repl. Vol.) provides that "[i]f the petitioner has a husband or wife living, competent to join in the petition *and not separated from the petitioner under circumstances which would give the petitioner a legal ground for divorce or annulment,* such husband or wife shall join in the petition." (Emphasis added.) The intent of § 70 is "that married persons who are living together and competent may adopt a person only upon the joint action of both."

Eversberg did not explain in his petition why his wife was not joined. Rule D71 c. He insists, however, that the cumstances indicate that he had "a legal ground for divorce" and thus, under Art. 16, § 70, *supra,* it was not necessary for his wife to join in the petition. We do not agree. He said the cause of the 1952 separation "would be about 3,000 different things" but this, of course, does not state a ground for divorce. All of the "3,000 different things" may have been his own peccadilloes. However, inasmuch as we shall remand the case for reconsideration in the light of what follows in this opinion, Evers-

berg may wish to avail himself of the opportunity thus presented so to amend his petition as to comply with Rule D71 c.

## II.

Doris next contends that Judge Bowen lacked the authority to decree the adoption and at the same time provide "that nothing in this decree shall affect * * * [her] parental rights * * * as the natural mother of said infants."

A similar provision was included in the decree in *Spencer v. Franks,* 173 Md. 73 (1937). There adoption was decreed over the objection of the child's natural mother but "[w]ith leave to parents to occasionally see the child." *Id.* at 77. We held the provision giving visitation rights was improperly included in the decree. Judge Parke, for the Court, noted that "[t]he power to decree an adoption did not exist at common law * * * [and therefore] the measure of the chancellor's authority is the statute." *Id.* at 81. He pointed out that "the general effect of the decree of adoption under the statute *was to terminate the legal relations between the child and its natural parents * * *." Id.* at 82. (Emphasis added.) The statute, he went on to say, intended "that the custody of the infant, which was an incident of the parental relation, would no longer be the right of the natural parents, but would be the exclusive right of the adoptive parents'.' *Id.* The supplementary clause, not having been authorized by the statute, was void. The effect of a decree of adoption upon the rights of the child's natural parents is made even more clear by the statute as now amended. Code, Art. 16, § 78 (1966 Repl. Vol.) provides as follows:

> "From and after the entry of * * * a final decree of adoption where no * * * interlocutory decree is entered, the following legal effects shall result:
>
> * * *
>
> "(b) The natural parents of the person

adopted, if living, shall after the interlocutory decree be relieved of all legal duties and obligations due from them to the person adopted, *and shall be divested of all rights with respect to such person."* (Emphasis added.)

Because of the harsh consequences of a decree of adoption we have often said that it will not be granted over parental objection unless it is clearly warranted. As stated by Judge (now Chief Judge) Hammond, for the Court, in *Walker v. Gardner,* 221 Md. 280, 284 (1960) :

"* * * Unlike awards of custody * * * adoption decrees cut the child off from the natural parent, who is made a legal stranger to his offspring. The consequences of this drastic and permanent severing of the strongest and basic natural ties and relationships has led the Legislature and this Court to make sure, as far as possible, that adoption shall not be granted over parental objection unless that course clearly is justified. The welfare and best interests of the child must be weighed with great care against every just claim of an objecting parent."

Judge Hammond's language was quoted with approval in *Lippy v. Breidenstein,* 249 Md. 415, 420 (1968), and *Beltran v. Heim,* 248 Md. 397, 401 (1968).

Doris, in her brief, says "[i]t is evident * * * that the adoption * * * would not have been granted and * * * [Judge Bowen] would not have concluded that * * * [she] withheld her consent to the adoption contrary to the best interest of the children, had * * * [he] realized that * * * [he] could not grant * * * the adoption and also [in the same decree] reserve * * * [her] parental rights * * *." Although it is clear that the chancellor lacked this authority we do not think his error is necessarily fatal to the balance of the decree. In *Spencer v. Franks, supra,* our predecessors held that the clause under attack was severable from the remainder of the de-

cree since "if the clause under consideration had not been inserted at the end of the decree, the status established by the decree thus modified would be exactly what is contemplated by the statute of adoption." *Id.* at 81. The same might be said here. However, our examination of the record leads us to question whether Judge Bowen would have decreed the adoption had he been advised of the true state of the law. Since we think, in the circumstances, that he very well may wish to reconsider the matter we shall remand the case without affirmance or reversal. Rule 871 a.

### III.

If, as both Eversberg and Judge Bowen seem to be saying, the only objective here is merely the legitimation of the children, we think there may be a less traumatic approach to the problem. Code, Art. 93, § 1-208 (1969 Repl. Vol.) provides:

> "A person born to parents who have not participated in a marriage ceremony with each other shall be deemed to be the child of his mother. He shall be deemed to be the child of his father only if his father (1) has been judicially determined to be the father in a proceeding brought under § 66E of Article 16, (2) has acknowledged himself, in writing, to be the father, (3) has openly and notoriously recognized the person to be his child, or (4) has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father."

There follows an excerpt from the comment in *The Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland* (1968) at page 9:

> "The only change in substance made in this Section is the inclusion of a provision permitting an illegitimate child to inherit from a father who has been adjudicated as the father in a pro-

ceeding brought for that purpose *or who has been judicially ordered to support the child.*[1] This Section also spells out more fully the procedure for legitimation by acknowledgment without a subsequent marriage as * * * [was formerly] required by the Maryland law. It reflects the modern policy in the direction of mitigating the impact of illegitimacy."

*See also* Code, Art. 16, § 66A (1966 Repl. Vol.). It is beyond dispute that conditions (1), (2) and (3), as set forth in § 1-208, have been established; it should be remembered, however, that they were established prior to 1 January 1970, the effective date of § 1-208. It seems to us that either Eversberg or Doris is free to seek a judicial declaration that the children "shall be deemed to be the" children of Eversberg, for the purpose of bringing them within the meaning of "child" as defined in § 1-205, within the meaning of "issue" as defined in § 1-209 and thus enabling them to inherit from him as provided in § 3-103; and, perhaps, at some future time, should Eversberg become destitute, to become responsible for contributing to his support as required by Code, Art. 27, § 104 (1967 Repl. Vol.). *Cf. Buford v. Bunn,* 247 Md. 203 (1967), and *Quinan v. Schneider,* 247 Md. 310 (1967).

Factors which we have considered important in determining whether consent has been withheld unjustifiably were discussed by Chief Judge Prescott, for the Court, in *Logan v. Coup,* 238 Md. 253, 257 (1965), and they could very well provide Judge Bowen with a context in which to reconsider the case.

> *Case remanded without affirmance or reversal for reconsideration of the decree and further proceedings, conformable with the views expressed in this opinion.*
> *Appellee to pay the costs.*

---

1. It will be observed that the Legislature did not include the italicized language when it enacted § 1-208.