THOMAS *v*. SOLIS ET AL.

[No. 66, September Term, 1971.]

*Decided November 18, 1971.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Frank M. Kratovil* and *Daniel D. McFarland* for appellant.

*William J. Rubin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Henry R. Lord, Deputy Attorney General,* on the brief, for the State officials, part of appellees. No brief filed on behalf of the Solises, other appellees.

*Amicus Curiae* brief filed by National Juvenile Law Center, *T. E. Lauer, Deputy Director,* and *Ellen C. Hanson* on the brief.

FINAN, J., delivered the opinion of the Court.

Nelson Thomas (Thomas) filed a petition for declaratory relief in the Circuit Court for Prince George's County whereby he sought to have himself judicially declared the father of his three illegitimate children, and a further declaration as to his rights and duties in that status. Shirley Williams Solis, mother of the children, Daniel Solis, her husband, and four officials of the State of Maryland, i.e., the Attorney General, the Comptroller, the Secretary of Mental Health and Hygiene, and the State's Attorney for Prince George's County were named defendants. Separate demurrers were filed by the Solises and by the State officials. The lower court treating both demurrers as one, sustained the demurrer without leave to amend; however, we shall consider the demurrers as separately filed. It is from this ruling by the lower court (Loveless, J.) that Thomas now appeals. The four State officials are the only appellees of record who appear.

Thomas filed his petition on July 23, 1970, on his own behalf and on behalf of the illegitimate children. In it

he alleges that as a result of cohabitation with Miss Shirley Williams (now Mrs. Daniel Solis) he fathered four illegitimate children, only three of whom now survive; that the three children lived continuously with him and Mrs. Solis until 1966, except for a period of 13 months during which he was confined in a reformatory for the illegal operation of a lottery; that in 1966 Mrs. Solis abandoned him and the children and upon leaving demanded that he assume the care and custody of the children; and that the children continued to live with him until July 29, 1968, at which time the Circuit Court for Prince George's County awarded custody of the children to Mrs. Solis.

The petition further alleges that Mrs. Solis has threatened to remove the children from the jurisdiction and that she has at times refused the appellant visitation rights with the children and that she and her husband intend to adopt the children. Thomas requested the court to declare him the natural father of the children, to protect his visitation rights and those of the children, to enjoin Mr. and Mrs. Solis from adopting the children without first giving notice to him and to prevent the removal of the children from the jurisdiction. Thomas additionally sought to have several State statutes which differentiate between the parents of legitimate and illegitimate children and between the children themselves declared unconstitutional as in violation of the due process and equal protection clauses of the United States Constitution and the Maryland Declaration of Rights.[1]

---

1. The appellant claimed that Code (1971 Repl. Vol.), Art. 43, § 601 (c-1) and Code (1971 Repl. Vol.), Art. 27, § 97, place upon him a continuing liability for the care and support of the children, but that he is not accorded the reciprocal rights given to fathers of legitimate children under Art. 27, § 104 and Art. 43, § 601. It was contended that the refusal of Maryland law to grant the appellant the same status as fathers of legitimate children with respect to notice, care, control, supervision, guidance and visitation was abhorrent to the traditional concepts of due process and equal protection. In addition it was argued that the petitioners were denied due process and equal protection under the law by the operation of Code (1966 Repl. Vol.), Art. 16 in withholding any effective means of legitimation of children and by the opera-

After a hearing on the demurrer, the lower court, while recognizing that demurrers are rarely appropriate in declaratory actions (*Borders v. Board of Education,* 259 Md. 256, 269 A. 2d 570 (1970)), sustained the demurrer, ruling that no circumstances were present in the instant situation, nor allegations in the petition, which created a justiciable issue. *Patuxent Oil Co. v. County Comm'rs,* 212 Md. 543, 129 A. 2d 847 (1957); Maryland Code (1971 Repl. Vol.), Art. 31A, § 6. We must determine the correctness of this ruling.

In the recent case of *Dawson v. Eversberg,* 257 Md. 308, 262 A. 2d 729 (1970), we were presented with a situation similar to that found in the case at bar. There, the father of illegitimate children sought to remedy the status of illegitimacy by adopting the children without the consent of the mother. The lower court awarded the adoption to the father while reserving the mother's rights. We reversed the lower court's order as inappropriate; however, Judge McWilliams writing for the Court referred to a "less traumatic approach to the problem," other than by adoption, offered by the provisions of Code (1969 Repl. Vol.), Art. 93, § 1-208, stating:

"* * * It is beyond dispute that conditions (1), (2) and (3), as set forth in § 1-208, have been established; * * *. It seems to us that either Eversberg or Doris is free to seek a judicial declaration that the children 'shall be deemed to be the' children of Eversberg, for the purpose of bringing them within the meaning of 'child' as defined in § 1-205, within the meaning of 'issue' as defined in § 1-209 and thus enabling them to inherit from him as provided in § 3-103; and, perhaps, at some future time, should

tion of Code (1969 Repl. Vol.), Art. 81, §§ 104 and 105 in imposing differing tax rates on the inheritances of legitimate and illegitimate children. It was because of the implication which Thomas read into the criminal and tax statutes referred to in this footnote that he included as party defendants the Attorney General, Comptroller, and State's Attorney for Prince George's County.

Eversberg become destitute, to become respon-
sible for contributing to his support as required
by Code, Art. 27, § 104 (1967 Repl. Vol.). Cf.
*Buford v. Bunn,* 247 Md. 203 (1967), and *Qui-
nan v. Schneider,* 247 Md. 310 (1967)." 257
Md. at 315.

Although the appellant's petition in this case was filed
in July of 1970, some six months after *Dawson* and the
lower court's opinion was filed in January of 1971, not
quite a year after the opinion in *Dawson,* it would ap-
pear that the lower court had reservations concerning
the application of *Dawson* and whether it would cover
the relief requested by Thomas. We are of the belief
that under the rationale of *Dawson,* Thomas can obtain
all of the relief to which he is rightfully entitled.

It is significant that the Attorney General in the brief
filed on his own behalf and on behalf of the State offi-
cials, not only concedes the availability of but proposes
declaratory relief for the appellant within the frame-
work of the provisions of Article 93, § 1-208,[2] stating:

"It would appear that the crux of Appellant's
Petition for Declaratory Relief, and indeed the
only issue of any substance, is Appellant's re-
quest for a declaration that he is the natural
father of the children and/or that they be
deemed legitimated. It is the position of the
State that the case of *Dawson v. Eversberg,* 257
Md. 308, 262 A. 2d 729 (1970) establishes that
under the proper circumstances the father of

2. Article 93, § 1-208:
"A person born to parents who have not participated
in a marriage ceremony with each other shall be deemed
to be the child of his mother. He shall be deemed to be the
child of his father only if his father (1) has been judi-
cially determined to be the father in a proceeding brought
under § 66E of Article 16, (2) has acknowledged himself,
in writing, to be the father, (3) has openly and notori-
ously recognized the person to be his child, or (4) has sub-
sequently married the mother and has acknowledged him-
self, orally or in writing, to be the father. * * *."

illegitimate children may properly bring an action for a judicial declaration that the children 'shall be deemed to be . . . his', pursuant to Article 93, § 1-208 of the Annotated Code of Maryland (1969 Repl. Vol.)." [3]

Elsewhere in the brief the Attorney General, in commenting on the applicability of *Dawson, supra,* to the case at bar, asserts:

"It is submitted that this decision [Dawson v. Eversberg] and Article 93, § 1-208 clearly refute Appellant's contention that Maryland law provides no means of legitimating the children. Not only does this decision state that an action for a declaration that the children are 'deemed to be the' children of the father, pursuant to Code, Article 93, § 1-208, is a proper procedure, but the Court's reference to Code, Article 27, § 104, 'Failure to Support Destitute Parents', clearly indicates that a legitimation accomplished pursuant to Article 93, § 1-208 acts as a legitimation for purposes other than inheritance. Indeed, as long ago as 1926, the Court of Appeals indicated in *Hollaway v. Safe Deposit & Trust Co.,* 151 Md. 321, 335, 134 A. 497, 502, that a legitimation provision contained in an inheritance statute was not limited to matters of inheritance only. It was stated there:

'We do not agree with the contention of appellees that Code, Art. 46, § 6, is an "inheritance statute" and nothing more, nor in the

3. It should be pointed out that the Attorney General, while conceding that the Maryland law (Code, Article 93, Sec. 1-208) provides for a means whereby a father may obtain a judicial declaration as to the legitimacy of his offspring, vigorously contended that the appellant's petition failed to create any justiciable questions regarding the constitutional issues raised by him regarding reciprocal rights of support. (Article 43, Sec. 601 (c-1) and Article 27, Sec. 97) and the difference in the rate of inheritance taxes which may be imposed on legitimate heirs as contrasted with illegitimate children. (Article 81, Secs. 104 and 105.)

contention that it confers only the right to inherit from the father.' * * *.'"

Indeed, in argument on appeal, counsel for Thomas took the position that a father seeking to legitimate his child had no recourse under the Maryland law and that the only area treating upon the subject was Code, Article 16, Sec. 66, which deals with the narrow question involving bastardy proceedings to determine the putative father for the purpose of fixing responsibility for support. The view taken by the appellant regarding Article 93, Sec. 1-208 was that it provided for legitimation solely for the purposes of inheritance. However, in our opinion this is not a valid assumption.

This Court has recognized both in *Dawson v. Eversberg, supra,* and *Holloway v. Safe Deposit & Trust Co.,* 151 Md. 321, 335, 134 A. 497 (1926), that a legitimation provision contained in an inheritance statute is not limited in its scope and application to matters of inheritance only. There certainly should be little that is startling about such a concept, for the reason that no right or privilege in the history of the common law, or in statutory law, is accorded greater sanctity than the right of inheritance. If the law provides a means of legitimation for the purposes of inheritance, such a procedure should certainly be of sufficient legal validity to establish other rights, ofttimes inferior to that of inheritance, arising from the relationship existing between parent and legitimate issue.

The trend of the courts throughout the country is to give a liberal interpretation to legitimation statutes or legislation which seeks to achieve that purpose, as is illustrated by the recent case of *Crane v. Battle,* 307 N.Y.S.2d 355 (1970), wherein a father sought a filiation order from the court. At the outset of the opinion the court noted, "The unusual facts herein present a novel twist in proceedings to establish paternity which are incorporated in Article 5 of the Family Court Act." The court further stated:

"Respondent, however, contends that the Family Court does not have the power despite Family Court Act, Section 511 to declare paternity at the behest of a petitioner who alleges that he is the putative father of the child in question, since a reading of the statute indicates that it was designed for a female, to wit the mother, to be the petitioner, and for a male, to wit, the putative father, to be the respondent, (Family Court Act, Section 523) and moreover the petitioner is not a proper party to institute these proceedings within the purview of Family Court Act, Section 522.

\* \* \*

"Clearly the Family Court fulfills its purpose when it declares a person to be the father of a child, whether such person be the petitioner or the respondent, thereby casting upon such person all the obligations of a father, legal and moral, to his child. The legislature of this State certainly did not intend to deny all relief in a case such as herein presented, just because the petitioner is a male, and the respondent is a female, when we consider that its purpose is to protect and care for innocent children of an illicit relation.

\* \* \*

"Accordingly, since the public policy of the State of New York permits a mother to determine the parental relation of a male to her child, then nothing would justify irrational discrimination against a putative father by denying the same determination to be made at the behest of a male, \* \* \*." 307 N.Y.S.2d at 357.

We do not find it necessary, in the case at bar, to broaden the application of Article 16, Sec. 66 (the Maryland statute corresponding to the Family Act in New York State), were it of legal accomplishment, so as to

provide within its framework a provision for a father to obtain a filiation declaration. As we have already stated, we hold that a reasonable construction of Article 93, Sec. 1-208, achieves that purpose and we think with a more satisfactory and "less traumatic" effect than a proceeding under Article 16, Sec. 66, were one available thereunder.

The well pleaded matter in the appellant's petition, which the demurrer would admit, supports the fact that Thomas "has acknowledged himself in writing to be the father of the children" [4] and "has openly and notoriously recognized" the children to be his. He would therefore appear to have satisfied the second and third of the four provisions for legitimation provided in Article 93, Sec. 1-208, any one of which is sufficient to legitimatize the children.

The record further reveals that during the year 1968 a custody proceeding was docketed in the Circuit Court for Prince George's County, which involved Thomas, the father of the children, Mrs. Solis, the mother, and the subject of which was the custody of the children he seeks to legitimatize. We are mindful that a custody case may always be reopened. *Kauten v. Kauten,* 257 Md. 10, 13, 261 A. 2d 759 (1970). Therefore in reversing the order sustaining the demurrer filed by the Solises and remanding the case for further proceedings, we do so with the direction that it be consolidated with the existing custody case for the purpose of enabling the court to make a declaration, should a hearing on the merits so warrant, on the following issues:

(a) The status of the children with regard to whether they are the legitimate children of Thomas in light of our construction of Article 93, Sec. 1-208.

---

4. The very signing of the petition in the instant case would satisfy provision (2) of Article 93, Sec. 1-208. See Matthews v. Kernewood, Inc., 184 Md. 297, 306, 40 A. 2d 522 (1945); and Parker v. Tilghman V. Morgan, Inc., 170 Md. 7, 25, 183 A. 224 (1936) for cases which hold that parties are generally bound by allegations or admissions in their pleadings.

(b)  Visitation rights of the father.

(c)  Notification of the father of any adoption proceedings.

(d)  Notification of the father as to removal of the children beyond this jurisdiction.

(e)  Support by the father of the children.

(f)  Such other matters as may require resolution germane to the father-child relationship.

We further hold that the constitutional questions raised regarding the rights of Thomas and the children and their reciprocal rights, under Article 43, Sec. 601 (c-1) ; Article 27, Sec. 97; Article 27, Sec. 104; Article 43, Sec. 601; Article 16, Sec. 66 and Article 81, Secs. 104 and 105, are so remote and abstract as to create no justiciable issues and therefore the demurrer filed by the State was properly sustained and the order in that respect should be affirmed.

> *Order sustaining demurrer of Solises reversed and sustaining demurrer as to State affirmed, case remanded for further proceedings in conformity with this opinion, appellees to pay costs.*