Who is entitled to receive the war risk insurance of John A. Dempster, deceased, is the question here presented. When John A. Dempster *Page 460 
was about one year old his parents separated and he continued to live with his father about 11 years. At that time the father made arrangements for the son to live and board with other parties and went away to work in a mill. Within a year the mother consented to the adoption of John A. Dempster by Samuel Bell and Mary Bell, the latter being a sister of John A. Dempster's father. This proceeding was consummated on the theory that John A. Dempster had been abandoned by his father; and the father is said to have had no knowledge of the adoption during the son's lifetime. After an absence of about four years, the father returned, and from that time on until John A. Dempster entered the service in the World War in March, 1918, he and his father lived together. Upon entering the service John A. Dempster, who was then 27 years old, took out war risk insurance in the amount of $10,000, naming his adopted mother as a beneficiary to the extent of $5,000. The insured died in June, 1918, without having married and intestate. The accruing monthly payments were made under this policy to his adopted mother until her death in May, 1928. Thereupon John's father, Warren Dempster, filed a petition in the probate court of Lapeer county and was appointed administrator of John's estate, which consisted of the unpaid portion of the 240 monthly payments of insurance computed at present worth and amounting to $2,994. John's mother had died in the meantime and the father claimed the insurance as the sole heir of his son. After Warren Dempster had been appointed administrator of John's estate, George Bell and June Duprey, a son and daughter of John A. Dempster's adopted mother, filed a petition in the probate court in which they pray that the appointment *Page 461 
of Warren Dempster as administrator be set aside and that they be determined to be the lawful heirs of the estate of the deceased. Upon the hearing in the probate court and also upon the appeal taken in the circuit court, this claim on the part of George Bell and June Duprey was sustained; and Warren Dempster has brought the case to this court for review by writ of error.
It seems to be conceded in this case that at the date of John's death the provisions of the Michigan statute were such that his estate would have gone to his father. But in 1923 the legislature passed an act providing:
"All personal property of an adopted child, dying intestate, shall be distributed to the same persons and in the same manner as though such adopted child had been the natural child of its adopting parents." Act No. 225, Pub. Acts 1923, § 1, subsec. 8.
Act No. 45, Pub. Acts 1923, contains a similar provision relative to real estate. Appellant claims that the change in the laws of descent and distribution of this State made in 1923 cannot affect the rights of the heirs of John A. Dempster, who died five years previous. On the other hand, it is the contention of the appellees that neither the insured nor the beneficiary named in his certificate had any vested rights in the unpaid portion of the insurance until the death of the beneficiary named, which occurred in 1928, and therefore the distribution of the estate must be controlled by the law as in force in May, 1928.
The appellees have cited and rely much upon Sutton's Executor
v. Barr's Administrator, 219 Ky. 543 (293 S.W. 1075); but this case holds only that "under war risk life policy, heirs of insured in *Page 462 
being at time of beneficiary's death take amount remaining due on policy." The question with which we are concerned is which statute controls the determination of who are the heirs of John A. Dempster. Is it the statute that was in force at his death or the subsequently enacted statute which was in force at the death of the beneficiary? Under the war veterans act, 1924, § 303, as amended by act of congress, March 4, 1925, § 14 (U.S. Comp. Stat. § 9127 1/2-303 [38 USCA § 514]) the unaccumulated installments at the death of the beneficiary computed at their present worth were made payable to the estate of the insured soldier. There is an unbroken line of authorities which holds that, after the death of the insured, the beneficiary has no vested rights in the unpaid installments provided for in the policy, and the validity of amendments retroactively affecting their rights have been uniformly upheld. In this respect war risk policies differ from the ordinary insurance contract. SeeWhite v. U.S. (D.C.), 299 Fed. 855; Helmholz v.Horst (C.C.A.), 294 Fed. 417; Cassarello v. U.S. (D.C.), 271 Fed. 486; and Salzer v. U.S. (C.C.A.), 300 Fed. 767.
The question now before us was squarely decided in RePivonka's Estate, 202 Iowa, 855 (211 N.W. 246, 55 A.L.R. 570); and we quote with approval the following therefrom:
" 'The estate of the insured' came into being as the estate of a deceased person (i. e., the insured soldier) instantly upon the death of such deceased person. The heirs of a decedent are, under the laws of this State, to be determined by ascertaining upon whom the law casts the estate immediately upon the death of the ancestor. * * * Under the laws of descent and distribution in this State, the persons entitled to a decedent's estate, who, in case of intestacy, *Page 463 
are his heirs, are to be determined as of the time of the decedent's death. This is the only time recognized under the law for the purpose of ascertaining heirship. Congress undoubtedly had the power to have made disposition of the uncollected installments of war-risk insurance upon the death of the first named beneficiary. It did so by providing that, upon the death of said beneficiary, the unaccumulated installments should be paid to the estate of the deceased soldier. It would, therefore, be disposed of as assets of the estate of said decedent, and as of the date of the death of said decedent. The heirs of said decedent entitled to said fund are to be ascertained at no other date than the date of the death of the soldier. This fixes a certain and inflexible guide for ascertaining heirship, and one that we have recognized as thoroughly established in the law. This being true, the distribution of the assets coming into the hands of the administrator of the estate of said decedent must be made by determining the heirs of the said decedent as of the date of the death of the said soldier."
Holdings of like character will be found inBattaglia v. Battaglia (Tex.Civ.App.), 290 S.W. 296; In reCross' Estate, 147 Wn. 441 (266 P. 711), and Palmer v.Mitchell, 117 Ohio St. 87 (158 N.E. 187, 55 A.L.R. 566). In the Palmer Case a state of facts is presented which is very similar to that in the instant case, and the court said:
"We therefore arrive at the conclusion that the lump sum representing the present value of monthly installments thereafter payable was properly paid by the Federal government to the administrator of Basil (the insured soldier), and that the same should, in case of intestacy, be distributed to those who are entitled to his personal estate under the law as it existed at the time of Basil's death." *Page 464 
In determining that the personal property of an intestate, subject to the payment of his lawful debts, is to be distributed among those persons who were his heirs at the time of his death, the foregoing cases are in full accord with the Michigan decisions. Richmond v. Railway Co., 87 Mich. 374;Parks v. Norris, 101 Mich. 71.
The judgment of the circuit court is reversed, with costs to the appellant; and with direction to the circuit court to enter a judgment accordingly and to certify the same back to the probate court of Lapeer county.
FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.