**Andreria TYLER, A Minor Child By Her Mother and Next Friend, Beulah Edney**

v.

**Richard S. SCHWEIKER [1], Secretary, Department of Health and Human Services.**

Civ. A. No. Y–80–2770.

United States District Court, D. Maryland.

Dec. 21, 1981.

**1.** Richard S. Schweiker succeeded Patricia R. Harris as Secretary of Health and Human Serv- ices and, pursuant to 42 U.S.C. § 405(g), the appropriate substitution has been made.

Ethel Zelenske, Baltimore, Md., for plaintiff.

Glenda G. Gordon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This action is brought under 42 U.S.C. § 405(g) for review of the final decision of the Secretary of Health and Human Services denying the plaintiff, a minor, benefits as a surviving child under 42 U.S.C. § 402(d), based upon her deceased father's Social Security earnings record. The case is before the Court on the parties' cross motions for summary judgment. No hearing is deemed necessary. Local Rule 6.

On November 9, 1979, Beulah Edney filed an application on behalf of her minor daughter, plaintiff Andreria Tyler, for surviving child's insurance benefits on the account of the deceased wage earner, Andrew T. Tyler. (Tr. 107–110). The application was denied initially on May 6, 1977, and upon reconsideration on December 19, 1978. (Tr. 129, 131–134). On December 28, 1978, the mother requested a hearing before an Administrative Law Judge (hereinafter cited as ALJ) of the Bureau of Hearings and Appeal, Social Security Administration. Counsel for plaintiff waived the right to an oral hearing and, instead, filed numerous affidavits and entered into the following stipulation with the ALJ:

Andrew Tyler was domiciled in Michigan at the time of his death on February 4, 1976. He had lived with Ms. Beulah Edney in Baltimore, Maryland, from 1967 through February 1969, but they were not living together at the time of his death. All the facts of record demonstrate that the wage earner, Andrew Tyler was the biological father of Andreria Tyler, who was born on May 20, 1968, and that she was domiciled with her mother, Ms. Beulah Edney, on the date of her father's death. The wage earner contributed support for Andreria from her birth to February 1969 and made a subsequent contribution in May, 1969. At least two and possibly more telephone calls were made by the wage earner to Andreria and her mother in the years preceeding [sic] his death. Andreria would be deemed the legitimate child of the wage earner and would be deemed to be dependent upon him if the requirement of 42 U.S.C. Section 416(h)(2)(A) were to be met.

(Tr. 17). On June 3, 1980, the ALJ issued a decision denying plaintiff's claim. (Tr. 11–19). That decision became the final decision of the Secretary when it was affirmed by the Appeals Council on August 27, 1980. (Tr. 3).

Because of the nature of the issues raised in this case, a brief review of the statutory scheme providing benefits to the children of deceased individuals is essential. Generally, those children who meet the age, filing, and non-marriage requirements of the Act, 42 U.S.C. § 402(d)(1), are eligible for benefits if they were dependent upon the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). That plaintiff meets the age, filing and non-marriage requirements is not questioned.

A child is deemed dependent if he is (1) living with or supported by the wage earner at the time of his death, or (2) is the legitimate child of the wage earner. 42 U.S.C. § 402(d)(3). If a child is illegitimate, he or she may nonetheless be deemed legitimate for purposes of the Act (and therefore deemed dependent and entitled to benefits)

if he or she can show, *inter alia*, that he or she would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death. 42 U.S.C. § 416(h)(2)(A).

Plaintiff contends that the Secretary applied an incorrect legal standard in denying her benefits and that the decision should be reversed as a matter of law. She argues that, pursuant to the law of Maryland, plaintiff's lifelong domicile, she is a legitimate child and thus entitled to benefits under 42 U.S.C. §§ 402(d)(1) and 402(d)(3). Alternatively, plaintiff asserts that she would be entitled to inherit under the whole law of Michigan or the present Michigan intestate statute, and thus be entitled to benefits under 42 U.S.C. §§ 402(d)(1) and 416(h)(2)(A).

The ALJ, in concluding that plaintiff was not entitled to Surviving Child's Benefits (Tr. 19), based his decision on the fact that 42 U.S.C. § 416(h)(2)(A) "requires that the claimant's status be determined by the Court of the State in which the insured individual was domiciled at the time of his death" (Tr. 17), in this case, Michigan. Although the ALJ acknowledged plaintiff's argument that Michigan courts, under conflict of law rules, would apply Maryland law to determine plaintiff's legitimacy, he noted that Michigan courts had not considered the issue, and that "in the absence of a definitive ruling by the courts of Michigan that the law of the child's domicile would be applied, the Administrative Law Judge will not so find." (Tr. 17).

The ALJ further concluded that the Michigan statute which was in effect at the time of the wage earner's death, Mich. Comp.Laws Ann., Sec. 702.83, should be applied to determine plaintiff's legitimacy for the purposes of § 416(h)(2)(A), and that reference should not be made to the recently enacted Section 700.111(4)(c) of Michigan's Revised Probate Code. (Tr. 17–18). Because the more recent provision had not become effective until July 1, 1979 and had not been given retroactive effect by the Michigan legislature, the ALJ determined that the prior law, which did not legitimate plaintiff for inheritance purposes, should be applied. (Tr. 18).

Plaintiff's first contention, that she is a legitimate child under the law of Maryland, relies on the Maryland intestate succession statute, Md.Est. & Trusts Code Ann., § 1–208. Section 1–208 provides in pertinent part:

(b) *Child of his father*—A child born to parents who have not participated in a marriage ceremony with each other shall be considered to be the child of his father only if the father . . . . (3) Has openly and notoriously recognized the child to be his child; . . . .

Maryland decisions have consistently held that this section, although contained in an inheritance statute, is not limited in scope and application to matters of inheritance only, but instead is more in the nature of a general legitimating statute. *See, e.g., Thomas v. Solis*, 263 Md. 536, 283 A.2d 777 (1971); *Dawson v. Eversburg*, 257 Md. 308, 262 A.2d 729 (Md.1970). The section does not require any legal determination as a prerequisite to the application of the statute. *See Thomas v. Solis*, 283 A.2d at 781; *Williams v. Williams*, 18 Md.App. 353, 306 A.2d 564 (1973). Furthermore, this court has held that a child meeting any of the requirements of § 1–208 will be viewed as a legitimate child within the meaning of § 402(d)(3), and thus will be eligible for benefits. *Massey v. Weinberger*, 397 F.Supp. 817, 821 (D.Md.1975); *Allen v. Califano*, 452 F.Supp. 205, 212 (D.Md.1978). Therefore, if the wage earner did "openly and notoriously" recognize plaintiff as his child in accordance with § 1–208(b)(3), she would be considered legitimate under Maryland law, would be deemed dependent under 42 U.S.C. § 402(d)(1)(C)(ii), and would properly qualify for benefits.

Plaintiff's second contention is that she is entitled to inherit under the whole law of Michigan including its choice of laws provisions. Assuming, *arguendo*, that the ALJ's decision that Michigan laws must be applied

is correct, she maintains that because Michigan courts would recognize her status as a legitimate child under the laws of Maryland, she would be entitled to inherit by intestate succession under the laws of Michigan. Thus, she argues, she would be deemed legitimate for the purposes of the Act, 42 U.S.C. § 416(h)(2)(A), and would qualify for Surviving Child's Benefits.

Although plaintiff argues that Michigan courts would look to Maryland law to determine legitimation for the purpose of Michigan intestate succession law, both parties agree that Michigan courts have not considered this particular issue. Plaintiff suggests, however, that the general conflict of law rules mandate application of Maryland law. Additionally, plaintiff argues that Michigan courts' recognition of family status accorded by the laws of other states or jurisdictions indicates that they would apply Maryland law to determine plaintiff's legitimacy status.

The general conflict of law rules support plaintiff's analysis. The Restatement (Second) Conflict of Laws, § 287, provides:

Law Governing Legitimacy :

(1) Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent under the principle stated in § 6.

(2) The child will usually be held legitimate if this would be his status under the local laws of the state where either (a) the parent was domiciled when the child's status of legitimacy is claimed to have been created or (b) the child was domiciled when the parent acknowledged the child was his own.

Additionally, comment (g) to § 287 of the Restatement, entitled: Legitimacy under local law of child's domicil, explains the rationale:

Since the status of legitimacy is to be preferred over that of illegitimacy, compliance with the requirements of the state of the child's domicil should be enough to legitimate the child unless considerations of fairness to the parent for-

bid. Such considerations do not exist in a situation where the parent acknowledges the child as his own, and, under the local law of the state of the child's domicil, this acknowledgement legitimates the child with respect to the parent. By his acknowledgement, the parent has recognized the child to be his and has intentionally conferred upon him a certain status.

The Annotation to 87 A.L.R.2d 1274 (1963 and 1979 Supplement) also confirms that this is the approach taken by the majority of courts:

[W]here the law of the situs provides no statute of inheritance either absolutely excluding those born out of wedlock, regardless of legitimation, from the line of succession, or, conversely, absolutely bestowing inheritance rights upon such persons, the rule that the law of the situs determines inheritance rights does not in itself necessarily resolve the question of what law determines the status of the child as legitimate or illegitimate.... [T]he courts in an overwhelming majority of jurisdictions take the position that the question of whether a particular child has acquired the requisite status of legitimacy to bring him within the class of persons who are permitted to inherit is a question, not of descent or distribution, but of personal status, and such is governed by the personal law of the child and the existence or acquisition of legitimate status by the child's personal law will be given effect under the inheritance law of the situs. (footnotes omitted).

Id. at 1278. Michigan's reliance on these general rules is demonstrated by a Michigan Attorney General's Opinion, 1955 Op. Att'y Gen. 341, concerning adoption. The opinion accepts the prevailing rule that adoptive status determined by another state should be honored, and cites the Restatement of Law of Conflicts and pertinent A.L.R. Annotations as authority. Similarly, in other analogous situations, Michigan courts have recognized the family or personal status accorded by the laws of other states or jurisdictions. See Westbrook v.

*Elder,* 264 Mich. 138, 249 N.W. 617 (1933) (dealing with a contract concerning heirship by adoption where the contract was given validity under the law of Ontario but was sought to be modified and enforced under Michigan law); *Toth v. Toth,* 50 Mich.App. 150, 212 N.W.2d 812 (Mich.1973) (dealing with the validity of marriage between two first cousins where marriage was not solemnized in the State of Michigan).

If plaintiff is correct that Michigan courts would recognize her status as determined under Maryland law, then a showing of "open and notorious" recognition of the plaintiff by the wage earner would allow her to inherit under Michigan's intestate succession statute. Therefore, she would be deemed legitimate for the purposes of the Act, 42 U.S.C. § 416(h)(2)(A), and would qualify for benefits.

This Court concludes that the Michigan courts would follow the majority conflict of laws rule and would apply Maryland law in order to determine plaintiff's legitimacy *vel non.*

Even assuming, *arguendo,* that only Michigan intestate succession laws apply to this case under the incorporation of state law by 42 U.S.C. § 416(h)(2)(A), plaintiff submits that the present Michigan statute[2] should be applied to determine her legitimacy status. She concedes that under the prior statute[3] she would not be deemed legitimate. However, under the new Michigan statute, plaintiff would be legitimated and able to inherit from her father's estate if she can show that she and her deceased father had a mutually acknowledged relationship of parent and child. Accordingly, she would then be entitled to benefits under 42 U.S.C. §§ 416(h)(2)(A) and 402(d)(1) (C)(ii).

The ALJ applied the law in effect at the time of the death of the wage earner, § 702.83. The general rule, however, is that a "court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."[4] *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *See also Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969); *Hicks v. Califano,* 600 F.2d 1048, 1050 (4th Cir. 1979). Thus, if plaintiff can show "mutual acknowledgment" she would be entitled to inherit under Michigan law and

2. Mich.Comp.Laws Ann., § 700.111(4)(c) provides in pertinent part:

(4) For all purposes of intestate succession, an illegitimate child, from his birth, bears the same relationship as a legitimate child to his mother and also to his father if the father does any of the following: ... (c) The father and the child have borne a mutually acknowledged relationship of parent and child which began before the child became 18 and continued until terminated by death of either.

3. Mich.Comp.Laws Ann., § 702.83 provided:

Sec. 83. Upon the intermarriage of the parents of a child born out of wedlock, or, in the absence of such intermarriage, upon the parents of such child, by writing under their hands, acknowledging it as their child, in either instance such child shall be legitimate with the identical status, rights and duties of a child born in lawful wedlock, effective from its birth. It shall not be necessary for the mother of such child to join in such acknowledgment in case she is disqualified to act by reason of insanity, mental incapacity, death, or if for any other reason satisfactory to the probate judge of such county, it is not practical for her to join therein. The failure of the

mother of such child to join in any acknowledgment otherwise filed in accordance with the provisions of this section shall not invalidate or otherwise affect the same in any manner. Such acknowledgment shall be executed and acknowledged in the same manner by law provided for the execution and acknowledgment of deeds of real estate, and be recorded at any time in the office of the judge of probate of the county in which such father or mother of such child resided at the time of the execution and acknowledgment.

4. This case can be distinguished from *Allen v. Califano,* 452 F.Supp. 205, 215 (D.Md.1978), which held that Md.Est. & Trust Code Ann., § 1–208, should not be given retroactive application. The statute in *Allen* clearly stated that it was to apply only to the estates of decedents who died on or after its effective date. In the case at bar, however, there is no indication that the Michigan legislature foreclosed any retrospective application of § 700.111(4)(c). Additionally, this application does not have the effect of re-opening and relitigating claims against a closed estate. *See Cooper v. Harris,* 499 F.Supp. 266, 267 (N.D.Ill.1980).

would thus be entitled to benefits. 42 U.S.C. § 416(h)(2).

Accordingly, even if Michigan law were applicable the ALJ applied the wrong statute and plaintiff should have been afforded an opportunity to show that she was entitled to benefits under the new statute.

■■■■ The function of this Court on review is not to try plaintiff's claim *de novo,* but rather to leave the findings of fact to the Secretary of Health and Human Services and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *King v. Califano,* 599 F.2d 597 (4th Cir. 1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir. 1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Teague v. Califano, supra; Johnson v. Califano,* 434 F.Supp. 302 (D.Md. 1977). If there is substantial evidence to support the decision of the Secretary, then that decision must be upheld. *Jolley v. Weinberger,* 537 F.2d 1179 (4th Cir. 1976); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972). The Court is also empowered under 42 U.S.C. § 405(g) to remand the case to the Secretary upon a showing of "good cause" that further proceedings are necessary to reach a just result in deciding plaintiff's claim to disability insurance benefits. *King v. Califano, supra.*[5]

■■■■ Although plaintiff presented evidence that she was "openly and notoriously" recognized by the wage earner, the ALJ

did not make a specific finding on this issue. In order for this Court, on review, to make a proper evaluation of the findings and decision based upon the record, the ALJ must make clear and explicit findings on all facts that are essential to the determination of eligibility. This Court may not speculate as to the ALJ's findings; thus, such findings must be clear and explicit, and failure to do so may be cause for remand. *Smith v. Weinberger,* 394 F.Supp. 1002 (D.Md.1975).

Accordingly, this case will be remanded to the Secretary for a finding as to whether or not plaintiff has shown that the deceased "openly and notoriously recognized" her to be his child. If so, she is entitled to benefits.

---

**5.** On June 9, 1980, Congress amended the remand provision of the Act, Pub.L.No.96–265, § 307, 94 Stat. 458 (1980), to read as follows:

The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g) (1981). Thus, the amended version of 42 U.S.C. § 405(g) redefined the "good cause" standard to require a showing of the materiality of new evidence and an explanation of why it was not presented in prior proceedings. The instant case does not involve a situation where new evidence has been submitted for the Secretary's consideration, and, thus, the only question before the Court is whether "good cause" exists to justify a remand. H.R.Rep.No.100, 96th Cong. 2d Sess., 13.