**Wanda CARTER for Lakesha and Felicia CARTER, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 84–4649.

United States District Court,
E.D. Michigan, S.D.

Nov. 25, 1985.

Diane M. Kwitoski, Detroit, Mich., for plaintiff.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., for defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

The Court has reviewed the file, the Magistrate's Report and Recommendation and the Plaintiff's agreement with that Report. The Magistrate made several recommendations. This Court accepts the follow-ing. Under a statutory rather than a constitutional analysis of 42 U.S.C. § 416(h)(2)(A), this Court concludes that the applicable law, which was in effect at the time of the application, governs. In applying that law to the instant case, this Court concludes that there is substantial evidence on the record to support the Administrative Law Judge's decision that Lakesha and Felicia Carter had inheritance rights under Michigan law requiring "a mutually acknowledged relationship of parent and child." Thus, Plaintiff's Motion for Summary Judgment is granted and the action is remanded to the Secretary of Health and Human Services for a computation and payment of benefits.

IT IS SO ORDERED.

## JUDGMENT

The Court has reviewed the file, the Magistrate's Report and Recommendation and Plaintiff's agreement with the Report. The Defendant has not timely filed any objections. The Report and Recommendation of the Magistrate is hereby accepted and adopted as the findings and conclusions of the Court.

IT IS ORDERED that the Motion for Summary Judgment of Plaintiff is granted and the case returned to the Secretary for a computation and payment of the benefits to which Plaintiff is entitled.

IT IS FURTHER ORDERED that the Clerk serve a copy of this Judgment by United States mail on the counsel for Plaintiff and on the United States Attorney for the Eastern District of Michigan.

## REPORT AND RECOMMENDATION

October 31, 1985

STEVEN D. PEPE, United States Magistrate.

This is a review under 42 U.S.C. § 405(g) of a denial of child's insurance benefits.

The worker, Leonard Nabors, died on May 7, 1977. Plaintiff applicants applied for benefits on June 15, 1982, claiming that Leonard Nabors was their father. Lakesha Carter was born out of wedlock on October 8, 1976, and Felicia Carter was

born out of wedlock on January 7, 1975. A decision by an Administrative Law Judge (ALJ) granting plaintiffs benefits was overturned by the Appeals Council, which claimed that the ALJ made an error of law. Before considering the specific facts of this case, some background on the law would be appropriate.

## THE APPLICABLE LAW FOR CHILD'S SURVIVOR BENEFITS

An individual can receive child's survivor benefits under 42 U.S.C. § 402(d) if five conditions are met:

I. An application is filed.

II. The applicant is unmarried.

III. The applicant is under age 18, a full-time student under age 22, or under a disability before age 22.

IV. The applicant is a child of the insured worker under 42 U.S.C. § 416(d).

V. The applicant is dependent on the insured worker at the time of death.

In this case, there is no dispute regarding the first three conditions. The dispute centers on issues IV and V.

a. *Eligibility Issue IV—Being a "child" under the Act:*

There are four ways in which an applicant can be a "child" within the meaning of the Act. These can be labeled and defined as follows:

A. "The Inheritance Child" (42 U.S.C. § 416(h)(2)(A)).

If one would be a child under the state laws of the insured worker's domicile at the time of his death which determine the devolution of intestate personal property, one would be a child under the Act (or deemed a child if treated equivalently of a child under the appropriate state laws). (Most biological and adopted children would fall under this section.)

B. "The Flawed Marriage Child" (42 U.S.C. § 416(h)(2)(B)).

If one would be a son or daughter of an insured who undertook a purported marriage ceremony made defective by a procedural flaw or a prior undissolved marriage one would be deemed a child under the Act.

C. "The Written Acknowledgment or Court Decree Child" (42 U.S.C. § 416(h)(3)(C)(i)).

If one is a son or daughter, but not a child (or deemed to be a child) under A or B above, one can be deemed to be a child of a deceased worker if a *written acknowledgment, court decree* of *parenthood* or *support* made prior to death established the applicant as a son or daughter.

D. "The Other Evidence of Parentage Child" (42 U.S.C. § 416(h)(3)(C)(ii)).

Other evidence satisfactory to the Secretary shows the insured worker to be the mother or father of the applicant and the insured was either living with or contributing to the support of the applicant at the time the insured died.

b. *Eligibility Issue V—Being "Dependent" Under the Act:*

A "child" is deemed "dependent" under the Act if he is a legitimate or adopted child [42 U.S.C. § 402(d)(3)]. A child is deemed "legitimate" for the 402(d)(3) dependency test if he is a *flawed marriage child* under 416(h)(2)(B) or a *written acknowledgment/court decree child* or an *other evidence of parentage child* under § 416(h)(3)(C).

Type B, C and D children are all deemed dependent. Type D *other evidence of parentage children* are also deemed to fulfill eligibility condition V on "dependency" since proofs of living with the insured or supporting the insured were necessary to establish eligibility condition IV on being a child.[1] Again, the Type D *other evidence*

---

**1.** Conceptually, Congress would have been clearer if it had allowed a Type D applicant to fulfill eligibility requirement number IV of being a "child" under § 416(h)(3)(C)(ii) by merely showing other evidence satisfactory to the Secretary that the applicant is the biological child. Had Congress kept the "lived with/supported by" proofs under the "dependency" condition of

*of parentage child* is an illegitimate child of the insured who cannot inherit from the insured and for whom there is no written acknowledgment of paternity, filiation or support decree.

Under the Act, if an applicant meets the definition of "child", it is likely that the child applicant will be "deemed" dependent on the insured notwithstanding who supports the child or where the child lives. One small group of insured children who are not "deemed" dependent on the insured are illegitimate Type A *inheritance children* with whom the insured does not live and to whom the insured does not contribute funds, goods or services for support. This small group of illegitimate Type A *inheritance children* must prove their actual dependency on the insured to be eligible for survivors benefits.

■ Plaintiffs' counsel asserts that each of the plaintiffs is either a Type A *inheritance child,* or Type C *court decree child.* For reasons stated below, it appears that each is either a Type A *inheritance child* or a Type D *other evidence of parentage child.* While the Michigan Probate Court did enter a decree establishing that the plaintiffs were the children of the deceased worker, this decree was entered *after* the worker's death, and 42 U.S.C. § 416(h)(3)(C)(i)(III) requires that any such court decree be made *before* the death of the insured.

## MICHIGAN INHERITANCE LAW

At the time of the wage earner's death in 1977, Michigan Compiled Laws, § 702.83, provided for the legitimation of a child born out of wedlock either by intermarriage of the parents or by written acknowledgment of paternity which is executed and acknowledged in the same manner as real estate deeds and recorded in the Probate Court where the parents reside. An Amendment to the Probate Code, § 700.-111(4)(c), effective July 1, 1979, provided an additional means to establish a parent/child

relationship for purposes of intestate inheritance. Under the new provision, if it could be established that the father and child bore a "mutually acknowledged relationship of parent and child" which began before the child became 18 years of age and continued until the death of either, such a child could inherit.

## BACKGROUND FACTS

Following the death of Leonard Nabors on May 7, 1977, his mother, on July 27, 1977, filed an application for lump sum death benefits. She indicated that plaintiff was not married or survived by any children. On February 19, 1982, Wanda Carter filed for child's benefits on behalf of Lakesha and Felicia Carter. In the application, she noted that the children were not living with the insured at the time of his death and that Nabors had made no noncash contributions to the children and that the sole source of support for the children at the time of his death was AFDC payments.

In an Order of September 24, 1981, as amended October 1, 1981, the Wayne County Circuit Court (Tr. 75) determined that Lakesha T. Carter and Felicia J. Carter were children and heirs of the deceased and, thus, capable of taking under a wrongful death action brought on behalf of the estate. They each took approximately 31.5% of the estate, and the deceased's mother received 34.6%. These divisions were certified by the Circuit Court Judge to the Wayne County Probate Court. The Wayne County Probate Court, on November 19, 1981, determined that Lakesha Carter and Felicia Carter were heirs of the deceased (Tr. 69). The court records also note that during the deceased worker's lifetime, he and each child had a mutually acknowledged relationship as parent and child, which relation continued until his death, and the children thereafter bore a relationship to his mother as between grandparent and grandchild. The record further indicates that the court record

eligibility V, instead of merging it with the biological parentage issue under the "child of the insured" condition of eligibility IV for the Type

D child, the statutory/regulatory sections would cause less confusion.

shows that the deceased worker and Wanda Jean Carter, the applicants' mother, were scheduled to be married on May 14, 1977, which marriage did not occur due to Leonard Nabors' death on May 7, 1977 (Tr. 76).

The reconsideration decision considered plaintiff's application under the standards of the Type A *inheritance child*, § 416(h)(2)(A), and the Type D *other evidence of parentage child*, § 416(h)(3)(C)(ii). With regard to the new legitimation standard in the Michigan Probate Code effective July 1, 1979—of the "mutually acknowledged relationship" test—the reconsideration decision noted that this test applied to individuals who died on or after July 1, 1979 (Tr. 60). It noted that it was not bound by the Michigan Probate Court's decision of November 19, 1981, that determined that both of the applicants are heirs. The reconsideration opinion suggested that the Probate Court erroneously applied the post-July 1, 1979, "mutually acknowledged relationship" test to determine the heirs of a person who died prior to that time (Tr. 59–60). It noted, however, that the Probate Court determination would be relevant to the "other evidence of parentage" test under 416(h)(3)(C)(ii).

Throughout this case, there seems to be no dispute that Leonard Nabors is the biological father of the two applicants. However, the Secretary's decision at the reconsideration level found that under the other evidence of parentage test the applicants failed since they could not show that they lived with or received support from the worker prior to his death (Tr. 60–61).

The ALJ concurred that the applicants have not shown that the deceased worker contributed to their support. He found, however, that the July 19, 1979, change in the Probate Code did not substantially change the test for legitimation of children born out of wedlock. He found that the applicants were *inheritance children* since the father and each child bore a mutually acknowledged relationship of parent and child (Tr. 15–16).

On this issue, the Appeals Council disagreed with the ALJ and found that the July 1, 1979, amendment to the Probate Code added a new and different means of legitimation under the mutually acknowledged relationship test. Referring to a newly adopted regulation, 20 C.F.R. § 404.354, which was merely pending for consideration at the time of the ALJ's decision, the Appeals Council stated that the Secretary interpreted 42 U.S.C. § 402(d) to require the child to be dependent on the insured worker at the time of death and that for purposes of considering whether a person is an *inheritance child*, the applicable state law is the law in effect at the time of the worker's death and not at the time of the child's application. (See April 1, 1985 Edition of Code of Federal Regulations.) Thus, the Appeals Council found that neither applicant qualified either as an *inheritance child* who would be deemed to be dependent, or as an *other evidence of parentage child* since each had failed to demonstrate her dependence.

## THE INHERITANCE CHILD STANDARD

The first issue to be determined is whether for purposes of determining Social Security eligibility—and not determining how an individual's estate should be distributed—the applicable law should be the law in effect at the time of the worker's death or the law in effect at the time of the child's application.

### a. *The Constitutional Challenge*

Plaintiffs' counsel asserts that the earlier Michigan law was unconstitutional, and thus the appropriate standard should be the newly enacted Michigan standard. In *Allen v. Califano*, 456 F.Supp. 168 (D.Md. 1978), the state intestate law was found to be unconstitutional. Plaintiffs' counsel cites several cases, including *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and attempts to distinguish *In re Dempster's Estate*, 247 Mich. 459, 226 N.W. 243 (1929), and *In re Adolphson's Estate*, 403 Mich. 590, 271 N.W.2d 511 (1978). In light of *In re Blan-*

*co Estate,* 117 Mich.App. 281, 323 N.W.2d 671 (1982), upholding the pre–1979 statute, and *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), it is recommended that this Court not declare the Michigan statute to be unconstitutional. For the reasons set out below, this Court can avoid the constitutional issues and resolve this matter on statutory grounds.

### b. *The Applicable Law for the Inheritance Child Test*

For obvious reasons, Michigan applies its liberalized 1979 inheritance law only prospectively. This avoids the confusion and bitterness of relitigation over and redivision of portions of a decedent's estate which is of fixed size and which may have already been distributed and vested. See *In re Adolphson's Estate, supra,* 403 Mich. at 593, 271 N.W.2d 511. Similar efficiency and policy reasons do not exist to induce the Secretary not to apply the new standard to pending applications. Unlike the Probate Court, the Secretary would never have to make efforts to recall funds from others to whom the decedent's estate had been distributed prior to July of 1979. The Probate Court uses existing inheritance law to determine the *number* of beneficiaries and the *quantity* of each beneficiary's portion of the estate. The Secretary, on the other hand, adopts state inheritance law merely to measure the *quality* of the parent child relationship. The policy considerations for Social Security purposes are substantially different in light of the different purposes for which the Secretary adopts state inheritance laws. The remedial purposes of Social Security legislation, and not finality of judgments and efficiency, should be paramount.

The Secretary's new regulation, 20 C.F.R. 404.354, interprets the Social Security Act to mean that state law *at the time of the wage earner's death* is controlling for purposes of determining an *inheritance child.* If the Social Security Act intends this, it is all but clear. What is clear in 42 U.S.C. § 416(h)(2)(A) is that the law to be applied should be drawn from the state where the deceased worker was domiciled at the time of his death. But what is ambiguous and has been the subject of dispute and litigation is whether the law of the appropriate state is to be looked at at the time the Secretary makes her decision or must be looked at and rigidly adopted at the time of the deceased's death.

The general rule is that:

The Court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

*Bradley v. School Board of Richmond,* 416 U.S. 696, at 711, 94 S.Ct. 2006, at 2016, 40 L.Ed.2d 476 (1974).

A Maryland district court reviewing the application for survivor's benefits for a child born out of wedlock with a father domiciled in Michigan at the time of his death had to decide the same issue that is before this Court. *Tyler v. Schweiker,* 530 F.Supp. 1028, (D.Md.1981). At the time of the father's death in 1977, and the initial Social Security determinations, the child could not have inherited under Michigan law. By the time the Maryland ALJ decided the matter in 1979, the Michigan Law had changed to include the "mutually acknowledged relationship" test, and the child applicant could inherit under Michigan law. The ALJ applied the law of Michigan at the time of death and denied benefits. The Maryland federal district court held that if Michigan law was applicable, the ALJ should have applied the current law and the "mutually acknowledged" test. The Court noted that in reviewing a Social Security application of a surviving child applicant, it was not necessary to reopen and relitigate claims against a decedent's closed estate.

There is a split of authority on whether to use the inheritance law in effect at the time of death or the time of decision, though the majority of courts have adopted the time of decision. As noted in the Appeals Council's decision, *Allen v. Califano,* 452 F.Supp. 205 (D.Md.1978), and *Ramon v. Califano,* 493 F.Supp. 158 (W.D.Tex.

1980), used the inheritance law in effect at the time of death. *Accord Cox v. Schweiker,* 684 F.2d 310 (5th Cir.1982). Both *Allen,* in a subsequent opinion (456 F.Supp. 168 (D.Md.1978)), and *Ramon* then found the old inheritance law unconstitutional and awarded Social Security benefits. These opinions give little reasoned consideration to their "time of death" holding, possibly because they are awarding benefits under a different theory. *Tyler, supra, Charles v. Schweiker,* 569 F.Supp. 1341 (E.D.N.Y. 1983), *Cooper v. Harris,* 499 F.Supp. 266 (N.D.Ill., 1980), and *Owens v. Schweiker,* 692 F.2d 80 (9th Cir.1982), used the inheritance law in effect at the time of decision. The Sixth Circuit has not decided a case on this issue.

In *Jones v. Schweiker,* 668 F.2d 755 (4th Cir.1981), the Fourth Circuit considered a Mississippi statute of intestate succession under 42 U.S.C. § 416(h)(2)(A) which did not permit illegitimate children to inherit from their father without certain legitimating action. Children whose claims for Social Security surviving children's benefits had been denied challenged its constitutionality. The Fourth Circuit upheld a denial of benefits without having to decide whether the Mississippi statute was unconstitutional and held that even if it were, benefits would not be granted under 416(h)(2)(A) since actual dependency was not shown. The Supreme Court granted *certiorari* and then remanded for further consideration in light of an amendment to the intestate law (Miss.Code Ann. § 91–1–5), (Cum.Supp. 1982), 460 U.S. 1077, 103 S.Ct. 1763, 76 L.Ed.2d 339 (1983). Since the Jones children's father, Odes Watson, died in 1975 (668 F.2d at 758), this clearly implies the Supreme Court anticipated that, under 416(h)(2)(A), the current Mississippi intestate law would apply, not the law in effect upon the worker's death which was challenged as unconstitutional in the Fourth Circuit.

*Ramon* and *Cox* both seem to rely on the Maryland district court in *Allen.* In *Tyler,* however, the same Maryland district court limited *Allen's* application to the specific Maryland statute that clearly stated it *applied only* to the estates of decedents who died on or after its effective date. (See footnote 4 of *Tyler.*) Absent such a specific "statutory direction", *Bradley, supra,* the Maryland federal court in *Tyler* applied the general rule of using the law in effect at the time of decision. Thus, *Allen, Ramon* and *Cox* are weakened as precedents.

The reasoning and grammatical analysis of Judge Morgan in *Copeland v. Califano,* No. 78–1004 (C.D.Ill., June 20, 1979), as set out and adopted by the Ninth Circuit in *Owens,* seems persuasive. 42 U.S.C. § 416(h)(2) states, "the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ..." An analysis of the plain meaning of this phrase suggests the use of the state intestate law applicable at the time the Secretary is called upon to make an eligibility determination. *Copeland* and *Owens* note that had Congress intended the Secretary to apply the law at the time the applicant's father died instead of the time of application, the Act should read:

> ... the Secretary shall apply such law as *would have been* applied in determining the devolution of intestate personal property ... by the courts of the State in which the insured was domiciled at the time of his death ...

As the law is written, the Secretary is directed at the time she determines whether the applicant is a "child" to look to the law of the state of the insured. In deciding which *state* to choose, the Act uses the following rules: For retired and disabled workers, use the state of the worker's domicile at the time of the application (not at the time of retirement age or disability). For deceased workers, use the state of the deceased worker's domicile at the time of death.[2]

---

**2.** It would be peculiar here to use "time of application" since decedents are generally not deemed to have a domicile after their time of

death which fixes it, notwithstanding their state of burial.

If this Court adopts the interpretation of 416(h)(2)(A) that the Secretary applies, this will result in illegitimate children of *deceased* workers receiving different treatment than such children of *retired* or *disabled* workers. Under the Secretary's interpretation, illegitimate children of *retired* and *disabled* workers could assure their inheritance rights test would be decided under the most current or favorable law merely by delaying their applications, whereas illegitimate children of *deceased* workers could not do this. This unequal treatment has no principled justification. If, however, this Court adopts the interpretation of 416(h)(2)(A) that the Ninth Circuit suggests, the Court avoids such unequal treatment.

There is no reason to give illegitimate children of retired and disabled workers such a procedural advantage over illegitimate children of deceased workers. The triggering eligibility event—retirement, disability, or death—should not affect the opportunities of an illegitimate child to be eligible for benefits. Or if it did, illegitimate children of *deceased* workers should be given an advantage not a disadvantage. If an illegitimate child of a *retired* or *disabled* worker cannot separately qualify as a "child" and get Title II benefits, at least the retired or disabled father (possibly the mother also) will get some Title II benefits which he could voluntarily use to assist the non-qualifying child. Such indirect sharing of benefits would not be available to the illegitimate child of a *deceased* worker. Thus, if procedural advantages are to be given, it would be more reasonable for them to flow to illegitimate children of *deceased* workers rather than those of *retired* or *disabled* workers.

It seems unlikely Congress thought about such procedural advantages. It may not have fully considered all the substantive permutations of 416(h)(2)(A).

■ In considering the interpretation of a statute, the interpretation of the administrative agency applying the law ordinarily is given great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Unlike questions of fact, a reviewing court can determine questions of law de novo. *First Nat'l. Bank v. Nat'l. Bank of So. Dakota*, 667 F.2d 708 at 711 (8th Cir.1981). Courts may reject an agency's interpretation of its statute when its regulations do not "honor the clear meaning of the statute, as revealed by its language, purpose and history". *Int'l. Brotherhood of Teamsters Warehousemen & Helpers of America v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979), or when the regulations are clearly wrong or unreasonable, *Fredricks v. Kreps*, 578 F.2d 555, 561 (5th Cir.1978).

We do not imply that deference to an agency's interpretation of the law equates with blind faith. A court is obliged to accept the administrative construction of a statute only so far as it is reasonable ... and consistent with the intent of Congress in adopting the statute. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–40, 38 L.Ed.2d 287.

*Committee for an Independent P.I. v. Hearst Corp.*, 704 F.2d, 467, 473, (9th Cir. 1982), *cert. denied*, 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 228 (1983).

Thus, this court is not bound by the Secretary's regulation interpreting the Act when it leads to bizzare results that do not seem in accordance with the overall remedial purposes of the Social Security Act. In interpreting the law, this Court should adopt an interpretation that avoids unnecessary, unreasonable and unequal procedural advantages for certain groups of similarly situated illegitimate children. *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), upheld different treatment for different groups of illegitimate children when the government could articulate a legitimate reason for such distinctions. No legitimate reason, however, exists for why the advantage gained by being able to choose when to apply should be available to illegitimate children of *retired* and *disabled* workers, but not available to illegitimate children of *deceased* workers. One might argue that illegit-

imate child applicants of *deceased* workers are less likely to actually be dependent on the worker than illegitimate child applicants of *retired* and *disabled* workers. Yet, this unverified premise was unlikely to have been a concern to Congress in establishing the *inheritance child* test since it "deemed" all *inheritance child* applicants to be dependent on the parent-worker without further proof. If Congress was concerned about actual contribution to the support and dependence of *inheritance children* of deceased workers, it could have required actual proof of dependence for them as it did for the *other evidence of parentage children* in 42 U.S.C. 416(h)(3)(C)(ii). This raises the question of why Congress may not have required proof of dependency for a Type A *inheritance child* [416(h)(2)(A)] but incorporated contribution standards into the qualifying test for a Type D *other evidence* of *parentage child* [416(h)(3)(C)(ii)].

Illegitimate children of non-supporting retired or disabled workers can have paternity and support actions brought on their behalf without regard to tight statutes of limitations. *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983). Such an illegitimate child would then get Social Security benefits as a Type C *court decree child* [416(h)(3)(C)(i)]. Since illegitimate children of deceased non-supporting fathers do not have paternity and support action opportunities to qualify under 416(h)(3)(C)(i) as do illegitimate children of living retired and disabled workers, they should at least have equal opportunities to qualify under the *inheritance child* provisions of 416(h)(2)(A).

One reason Congress may have deemed an *inheritance child* to be dependent is the reasonable Congressional policy that even if there was no support being paid by the father before his death, these children had inchoate rights to paternity and support actions that were terminated with the death of the father. Thus, their opportunities to qualify as an *inheritance child* acts as a protective surrogate for the lost right

of action to have a paternity and support action brought on their behalf.

*Lalli v. Lalli, supra,* and *Mills v. Habluetzel, supra,* found classifications against illegitimates valid only if they bear an evident and substantial relation to a legitimate state interest. This Court should interpret the Act in a manner that avoids such discriminatory classifications among illegitimates. The Ninth Circuit interpretation of 416(h) in *Owens* avoids such unequal treatment. This interpretation also meets the remedial objectives of the Social Security Act and is in accord with its spirit and purpose. *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

 Given the grammatical analysis of *Copeland* and the desire to avoid unequal treatment of illegitimate children of deceased workers when there are no reasons to do so, this Court should follow the Ninth Circuit and adopt the general rule stated by the Supreme Court in *Bradley.* Accordingly, the Secretary's regulation should be found inconsistent with the statute, and the Secretary should apply the inheritance law of Michigan that exists at the time she renders her final decision. Under that applicable law, there is substantial evidence to uphold the ALJ's finding that Lakesha and Felicia Carter had inheritance rights under Michigan law requiring "a mutually acknowledged relationship of parent and child." (Tr. 15).

ALTERNATE RECOMMENDATION— OTHER EVIDENCE OF PARENTAGE TEST

In addition to the above error, it is also apparent from the record that both the Appeals Council and the ALJ, as well as the Secretary at the reconsideration level, applied the wrong test for determining "regular and substantial contributions", and considering whether there was other evidence of parentage under 42 U.S.C. § 416(h)(3)(C)(ii). Each of these decision makers suggested that plaintiff could not have made regular and substantial contri-

butions necessary to qualify under the Act, particularly in the period immediately preceding his death when his income was substantially reduced (Tr. 60–61, 15, 6). The record reflects that the wage earner had total wages of $5,331 in 1976, $918.62 in the first quarter of 1977, $313 in the second quarter of 1977, as well as sick pay in the amount of $123.75 from February through April of 1977. The Appeals Council noted that plaintiff could not have made necessary contributions given his limited income.

In several cases involving *other evidence of parentage children* seeking survivors benefits, it has been held that the "regular and substantial contributions" test was erroneously applied in cases where the insured worker was marginally employed or unemployed in the year of his death. *McNeal v. Schweiker,* 711 F.2d 18 (3rd Cir.1983), *Childress v. Secretary of HHS,* 679 F.2d 623 (6th Cir.1982), *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982), *Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980), *Jones v. Harris,* 629 F.2d 334 (4th Cir.1980), *Santiago v. Mathews,* 431 F.Supp. 1213 (E.D.N.Y.1977), *Madison v. Richardson,* 354 F.Supp. 383 (M.D.La. 1973).

In *Jones,* the initial 1975 application was denied, and thereafter the applicant supplied supplemental evidence to show the deceased father purchased clothes, diapers and milk for his child who lived with the mother. In *Jones,* no more than $30.00 per month was alleged to have been paid by the father. As does the Appeals Council in this case, the ALJ in *Jones* noted inconsistencies between the initial application and supplemental statements after the denial of benefits and denied the claim, concluding that "while the wage earner may have occasionally given some money and goods, he did not make regular and substantial contributions for the support of the claimant" at the time of his death. 629 F.2d at 335–336. The *Jones* court noted that while the "regular and substantial contributions" standard is not required by the statute, it has been upheld by other courts. *Carey v. Social Security Board,* 62 F.Supp. 458

(W.D.Ky.1945), *Allen v. Califano,* 452 F.Supp. 205 (D.Md.1978). The Circuit Court in *Jones* stated:

> From the record, we cannot determine the exact significance attached by the ALJ to his requirement of regularity and substantiality of contributions. While we cannot believe that he understood and applied these in any absolute sense unrelated to the amount and flow of the wage earner's income and to the child's needs, we cannot be sure in the absence of any findings of fact upon these critical matters. Because the test applied to the claim is thus unclear, we cannot conduct a principled review, and must remand for reconsideration of the claim....

> Upon remand, the test properly to be applied is whether contributions regular and substantial in relation to the wage earner's income and the child's needs were made.

> The Act is intended to offset economic dislocation suffered by dependents on account of the death of the wage earner, see *Mathews v. Lucas,* 427 U.S. 495, 507, S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976). The purpose of the Act cannot be furthered by applying a test of substantiality of contribution in the abstract because the loss of small, regular contributions to a poor family would cause the economic dislocation the Act seeks to prevent. Whether the wage earner was contributing to the support of the child must be determined by comparing the amount and frequency of contribution with the wage earner's income and with the income of the family in which the child resided.

659 F.2d at 336.

The Sixth Circuit in *Parker v. Schweiker, supra,* agreed with this interpretation:

> The support requirement of 42 U.S.C. § 416(h)(3)(C)(ii) is not a fixed rule requiring regular or substantial support, but rather must be evaluated in light of the father and child's actual circumstances.

The *Parker* court also considered the need for support of the child. *Id.* at 164. In *Parker,* there had been no contributions in the last year. Nonetheless, the Sixth Circuit reversed a finding of no support and found without a remand that the § 416(h)(3)(C)(ii)'s support test was met.

In *Boyland v. Califano, supra,* the Sixth Circuit questioned the Secretary's practice of discounting "sporadic" payments as not counting as support. The Secretary had found that the deceased worker had not made continuous payments to his two illegitimate children and "probably had stopped altogether sometime before [his] death." *Id.* at 434. The Sixth Circuit found both the "regular and substantial" support test and the "regular and continuous support test" were inappropriately applied under the circumstances of the case. It found even periodic payments could be sufficient under certain circumstances to meet the support test. In *Boyland,* the mother in her application admitted the insured "was not contributing to their support" and apparently had not done so for three years. *Id.* at 432, fn. 5. *Boyland* notes the earnings of the insured or lack thereof in the year of death must be considered.

> Obviously, continuously regular and substantial contributions is a just standard when the wage earner's income is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied. Where a wage earner is poor and earns an irregular income, it is ludicrous to require regular and substantial payments to his children born out of wedlock or not. The wage earner is barely supporting himself. Instead, attention should be focused on whether the contributions that were made to the support of his children were important to them given their needs and the wage earner's economic circumstances and ability to support.... The lack of economic well-being or regular income does not eliminate the statutory requirement of "contribution."

> However, where the resources of the wage earner are scarce and the contributions to his children important to them, the statutory requirements can be satisfied. We emphasize that the periodic contributions were made to the wage earner's own children albeit born out of wedlock. The children should not be denied benefits because the wage earner could only afford small irregular payments.

633 F.2d at 434.

The insured gave $5.00–$10.00 to the two applicant children, bought them clothing and presents, gave them lunch money and had them as house guests at times. He also had two other of his illegitimate children living with him. Without a remand, the Sixth Circuit reversed all decisions below and awarded benefits.

*Childress v. Secretary of HHS, supra,* reiterated that *Boyland* and *Parker* state the law of the Sixth Circuit. Without a remand, *Childress* reversed a denial of child's survivor's benefits. The father had made contributions of $15.00–$20.00 per month. The court held there was insufficient evidence for the ALJ not to find this amount sufficient to fulfill the support requirements of § 416(h)(3)(C)(ii).

In *Santiago v. Mathews,* 431 F.Supp. 1213 (E.D.N.Y.), the court found small and irregular payments of $10.00—$50.00 every two, three or four months, and no more than $200.00–$300.00 a year, sufficient to be important to the support of the illegitimate child, reversed the Secretary and, without a remand, awarded benefits. In *Adams v. Weinberger,* 521 F.2d 656 (2nd Cir.1975), the illegitimate child was born after the death of the insured father. He had paid $200.00—$300.00 to the mother before the child's birth, $100.00 to register her in the hospital and promised to pay the hospital bill. This was found sufficient support to qualify the illegitimate child for survivor's benefits without a remand to determine his actual earnings during this period.

■ These cases show that the standard applied below for determining the level of Leonard Nabors' support for Lakesha and Felicia Carter was inappropriate under the facts of the case because of the limited employment and income of Leonard Nabors in the years before his death. Small and occasional support and sporadic payments are not necessarily disqualified as support.

Under certain circumstances of low earnings and periodic unemployment, small payments when employed and sporadic payments and in-kind contributions could qualify as support, even in the total absence of regular payments in the year of death, if the insured was out of work his final year. Thus, plaintiffs did not receive a full and fair hearing on the contributions and support issue since the needs of each child and the nature and extent of income of the insured were not taken into consideration as the courts have required.

The Secretary has now amended her regulations. While these amendments are in response to court rulings, they do not fully embrace the federal court precedents. The current regulation No. 4, Sub-part D, § 404.366(a)(2), drops the term "substantial" and requires only that the regular contribution meet an important part of ordinary living costs. Also, to avoid unfair discrimination against the involuntarily unemployed or temporarily ill workers, the new regulation in considering contributions disregards periods of temporary interruption caused by those two factors unless someone else takes over responsibility for supporting the child on a permanent basis.[3]

This new standard that is referred to by the Appeals Council (Tr. 4) is more restrictive than the standard of *Boyland, Parker* and *Childress*. Thus, the ALJ and the Appeals Council appear, under *Boyland, Parker* and *Childress*, to have applied the wrong support test under *Boyland, Parker* and *Childress*. While the new regulation does disregard the temporary interruptions caused by circumstances beyond the insured person's control, it still stresses *regular* payments *large* enough to meet an important part of the applicant child's living costs and it specifically excludes certain gifts and donations. The Secretary has issued a ruling, SSR 81-1c (January, 1981), stating it does not acquiesce in *Boyland* since the contributions there were not regular or large enough to meet an important part of the children's ordinary living costs nor were they made in the year of death. See 1 Unemp. Ins. Rep. (CCH), par. 12,335.-31, 12,358.81. *Childress* pointed out that the Appeals Council refused to hold ALJs to *Santiago v. Weinberger* if they were not in the jurisdiction of that court. *Childress* reminded the Secretary that *Boyland* and *Parker* are the law of the Sixth Circuit. Thus, to the extent that 20 CFR § 404.-366(a)(2) is inconsistent with the case law of this Circuit, the Secretary's regulation must yield. Though the *Childress* court was not applying this new regulation, by way of *dicta* it held that $15.00—$20.00 per month was large enough to meet an important part of Patrick Childress' ordinary living costs. 679 F.2d at 629, fn. 9, and at 630.

RECOMMENDATION

For the above-stated reasons, it is recommended that the inheritance law at the time

3. This later provision must anticipate some other natural person, such as a stepfather, and not the Department of Social Services. If DSS payments under AFDC were considered to fulfill this final proviso clause, then the entire scheme for temporary disregards during unemployment would never apply, and this portion of the regulation would be meaningless. This would result because Title IV AFDC benefits are available to *all* children without other support whose fathers are not living with them. If the insured worker/father here were living with the child at the time of death, then actual contributions need not be shown to get Title II survivor's benefits. Only deceased fathers not living with the child at time of death must be shown to have made regular contributions for the child to be eligible for survivor's benefits. All of these children could receive AFDC if the absent father was not paying any support during periods of illness or unemployment. The limitations on unemployment/illness disregards also require the surrogate to take over support obligations on a "permanent basis." AFDC payments are not permanent; they end when income eligibility ends. Also, nearly half of all welfare recipients do not stay on welfare for over one or two years. Duncan, *Years of Poverty, Years of Plenty*, (University of Michigan Institute for Social Research, 1984).

of the application should apply. As noted in the ALJ's opinion, under the mutually acknowledged relationship test, which had become the law by the time of plaintiffs' application, plaintiffs would be allowed to inherit under the laws of the State of Michigan and thus each would be deemed to be both a "child" and "dependent" under the Social Security Act and therefore eligible for Social Security child's benefits. It is thus recommended that the plaintiffs' motion for summary judgment be granted and the case remanded for an institution of benefits.

In the alternative, it is recommended that the case be remanded for a proper determination of "contributing to the support of the applicant" under 42 U.S.C. § 416(h)(3)(C)(ii), and for such further findings and determinations as are necessary to accord with the law as stated in *Childress, Boyland* and *Parker*.

Objections may be filed to this Report and Recommendation within ten (10) days of its service. 28 U.S.C. § 636(b)(1). Failure to file objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).